The People of the State of New York ex rel. Clarence G. Dinsmore, Respondent, *v.* H. Fremont Vandewater et al., Individually and as Members of the Town Board of the Town of Hyde Park, et al., Appellants.

1. Highways — New York and Albany Post Road — Power of Town Officers of Town of Hyde Park to Alter and Improve Same — Not Affected by Chapter 423 of Laws of 1896. The town board and commissioners of highways of the town of Hyde Park, Dutchess county, having had, under colonial laws and statutes of the state prior to the enactment of chapter 423 of the Laws of 1896, the power to alter and improve the New York and Albany post road, running through

that town, such power is not restricted or taken away by the latter act, since there is nothing in the provisions thereof that in any manner limits their jurisdiction or powers over that highway, except in one particular, that they are prohibited thereby from authorizing or licensing the laying of any railroad track upon the highway, except to cross the same; they have, therefore, the power, upon the petition of a taxpayer of the town, to authorize an alteration and improvement of a part of said road, lying within the town and within the premises of the petitioner, such improvement to be made by petitioner and at his expense, and upon the satisfactory completion thereof, to accept the road as changed and improved.

2. Same — Power of Town Officers of Town of Hyde Park Not Restricted or Affected by Section 77 of the County Law, Relating to the Alteration of State Roads. The power of the town board and highway commissioners to authorize the alteration and improvement in question is not restricted or made dependent upon the consent of the board of supervisors of Dutchess county by the provisions of section 77 of the County Law (L. 1892, ch. 686), providing that the board of supervisors of any county may authorize the commissioners of highways of any town in their county to alter or discontinue any road or highway therein, which shall have been laid out by the state, since it is apparent, from an examination of the Colonial Laws (Col. Laws, 1703, ch. 131; 1772, ch. 1536), and the statutes of the state (L. 1770, ch. 31; L. 1797, ch. 43; L. 1813, ch. 33), relating to the laying out, construction and maintenance of the New York and Albany post road and other public highways established prior to 1813, that under the colonial laws as early as 1772, especially in Dutchess county, where the alteration in question was made, commissioners of highways were empowered to alter highways that were deemed inconvenient, and that this power was continued by the state legislature in 1779 and by general laws in 1797 and 1813, and that the same power has been continued until the present day; it follows, therefore, that at the time of the passage of the County Law and of chapter 317 of the Laws of 1882, and even of chapter 83 of the Laws of 1817, the substance of which statutes is contained in section 77 of the County Law, the commissioners of highways of towns had been given jurisdiction over the existing colonial highways, with the power to make such needed alterations therein as should be deemed necesary, and that power has not been taken from them by the County Law.

*People ex rel. Dinsmore* v. *Vandewater*, 83 App. Div. 54, reversed.

(Argued November 9, 1903; decided November 24, 1903.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 5, 1903, which annulled a determination of the town board and highway commissioners of the town of Hyde Park alter-

ing and closing a part of the New York and Albany post road in that town.

The facts, so far as material, are stated in the opinion.

*Harry C. Barker* and *Henry B. Anderson* for appellants. The highway commissioners of the town of Hyde Park have authority to alter the New York and Albany post road. (L. 1890, ch. 586, § 80; *People ex rel.* v. *Jones,* 63 N. Y. 306; *Gress* v. *Hilliard,* 85 App. Div. 510; *People ex rel.* v. *Hildreth,* 126 N. Y. 360; *Engleman* v. *Longhorst,* 120 N. Y. 332; *Buckholz* v. *N. Y., L. E. & W. R. R. Co.,* 71 App. Div. 452.) The petition and affidavits on which the writ of certiorari was issued show that all of the provisions of the statute relative to the alteration of highways have been complied with, and that the town authorities acted within the scope of their authority. (*Buckholz* v. *N. Y., L. E. & W. R. R. Co.,* 71 App. Div. 452; *People ex rel.* v. *Jones,* 63 N. Y. 306; *Engleman* v. *Longhorst,* 120 N. Y. 332.) The only question which can be reviewed in this proceeding is the primary one of jurisdiction. (*People ex rel.* v. *Betts,* 55 N. Y. 600; *People ex rel.* v. *Brady,* 166 N. Y. 44; *People ex rel.* v. *Canal Bd.,* 7 Lans. 220; *People ex rel.* v. *Dewey,* 1 Hun, 529; *People* v. *Wheeler,* 21 N. Y. 82; *People* v. *Webb,* 50 N. Y. S. R. 46; *People ex rel.* v. *Comrs.,* 106 N. Y. 64; *People ex rel.* v. *Suprs.,* 17 App. Div. 197; *People ex rel.* v. *Wurster,* 149 N. Y. 549.) The writ of certiorari herein should not have been issued. No cause was shown therefor. (*People ex rel.* v. *Comrs.,* 93 N. Y. 97; *People ex rel.* v. *Hayden,* 7 Misc. Rep. 278; Elliott on Roads & Streets [2d ed.], 404, 405.)

*Egerton L. Winthrop, Jr., William Jay* and *Flamen B. Candler* for respondent. The action of the appellants, the town board and highway commissioners, in closing part of the New York and Albany post road and making a new road in its place, was without warrant in law and in violation of the express provisions of the statute. (L. 1896, ch. 423; *People ex rel.* v. *Wood,* 71 N. Y. 371; *People ex rel.* v. *Spicer,* 99

1903.]    People ex rel. Dinsmore v. Vandewater.    503

N. Y. Rep.]        Opinion of the Court, per Haight, J.

N. Y. 233; *Drake* v. *State*, 144 N. Y. 417.) If the court, however, should hold that this act of 1896 has no bearing upon section 80 of the Highway Law under which the proceedings of the highway commissioners were taken and that this road is still under the jurisdiction of local authority, then the proceedings to close the same were not in conformity with the proper statute, for the reason that this is a state road, established for over 200 years, which could only be closed in the manner provided for by the law applicable to the altering of a state road. (*R. & L. O. W. Co.* v. *City of Rochester*, 176 N. Y. 37.)

Haight, J.    These proceedings were instituted by a petition on behalf of the relator, a resident taxpayer of the town of Hyde Park, for a writ of certiorari to review the action of the town board and highway commissioners of that town in altering a part of the New York and Albany post road. On the 11th day of October, 1900, one Ogden Mills, a taxpayer of the town, presented an application to the commissioners of highways for an alteration in the New York and Albany post road for a distance of about fifteen hundred feet, running through his premises. It was represented that the proposed change would do away with a bad curve in the old road, avoid a hill and eliminate the danger to horsemen owing to the close proximity of the old road to the railroad. The town board consented to the proposed change and the highway commissioners made an order therefor in accordance with the application, providing that the land forming the bed of the old highway should, upon the completion of the proposed alteration, revert and become the property of the petitioner. Thereupon the new highway was constructed in a substantial manner, trees set upon the sides and the same was accepted by the commissioners of highways, and permit granted to the petitioner to close the old highway.

The learned Appellate Division appears to have reached the conclusion that the action of the local authorities in permitting the alteration was void and unauthorized, by reason

504    People ex rel. Dinsmore *v.* Vandewater.    [Nov.,

Opinion of the Court, per Haight, J.    [Vol. 176.

of the provisions of chapter 423 of the Laws of 1896. That act is entitled " An act to preserve forever the New York and Albany post road as a state public highway." The provisions are as follows : " § 1. The old established road along the valley of the Hudson River from the city of New York to the city of Albany, known as the Albany post road, shall be a public highway for the use of the traveling public forever. § 2. The said highway shall be kept open and free to all travelers, and shall not be obstructed in any way by any obstacle to free travel. § 3. No trustees of any village or corporation of any city upon its route, or board of commissioners of highways of towns, or any other person or board whatever, shall have any power or authority to authorize or license the laying of any railroad track upon said highway, except to cross the same, and any such action shall be void and of no effect. § 4. This act shall not apply to any portion of said road within the city of New York, nor shall it apply to the road of the president, directors and company of the Rensselaer and Columbia turnpike, nor to the villages of Sing Sing or Peekskill, in Westchester county."

In construing statutes we should have in mind the legislative intent and the purpose sought to be accomplished. It will be observed that there is nothing in the provisions of the statute that in any manner limits the jurisdiction or powers of local officers over the highway except in one particular. By its first and second sections it is provided that it " shall be a public highway for the use of the traveling public forever," and that it " shall be kept open and free to all travelers, and shall not be obstructed in any way." These provisions are but the repetition of the law as it exists with reference to all of the public highways of the state. They are all under the control of the legislature, and are required to be kept open and free to the traveling public forever unless they are discontinued in such manner as the legislature directs. But by the provisions of section three of the act we find express limitations placed upon the board of commissioners of highways of towns or other local officers thereof prohibiting them from

authorizing or licensing the laying of any railroad track upon the highway except to cross the same. Here we have, in clear concise language, disclosed the purpose and evident intent of the legislature. It was not to change the jurisdiction of officers over the care and management of the highway except to prohibit them from permitting the laying of railroad tracks therein, and this is emphasized by the provisions of section four of the act, wherein there is excepted from the operation of the statute, doubtless, for the purpose of permitting the operation of existing or contemplated street railroads, that portion of the highway lying in the city of New York, in certain villages mentioned and the Rensselaer and Columbia turnpike. With this exception the powers of the town board and of the commissioners of highways of the town of Hyde Park remain unimpaired, and, therefore, if they had the power to alter and improve the road prior to the passage of this act, then such power still exists and may be exercised by them.

It is now contended on the part of the respondent that the highway in question was a state road and that the town authorities had no power to alter the same unless authorized by the board of supervisors of the county in accordance with the provisions of section 77 of the County Law. That statute provides as follows : " The board (referring to the board of supervisors) may authorize the commissioners of highways of any town in their county to alter or discontinue any road or highway therein, which shall have been laid out by the state under the same conditions that would govern their actions in relation to highways that have been laid out by local authorities." This is a substantial re-enactment of chapter 317 of the Laws of 1882 which was evidently intended to take the place of chapter 83 of the Laws of 1817, which is as follows : " Whereas, great inconvenience has arisen from the want of authority in the commissioners of highways of the several towns in the state to *alter and amend such highways as are laid out by special acts of the legislature, commonly called state roads ;* and in order to prevent application being made to the legislature for every alteration in said roads as are sup-

posed to be necessary — Therefore be it enacted by the people
of the state of New York, represented in Senate and Assem-
bly, That it shall be lawful for the commissioners of high-
ways of any town in this state, through which a state road
passes, on being applied to by twelve freeholders of such town
and with the consent of the commissioners of highways of the
adjoining towns through which said road passes, to regulate
and alter such road, in the said town, if in their opinion the
public good and convenience shall require the same : *Provided,
however,* That no such alteration shall alter the general route
of the road : *And, also,* That the provisions of the act, entitled
'an act to regulate highways,' relative to the alteration and
amendment of public roads, shall be held to extend to such
alteration, as aforesaid, of any state road." The recitals preced-
ing the enactment indicate very clearly the purpose sought to be
accomplished by the legislation. Numerous special acts of the
legislature had been passed, after the organization of the state,
laying out what were called state roads. Many of these roads
were located and constructed through the agency of state
officers with state aid and not by the officers of the locality
through which the road was laid out. It was with reference
to these highways that the inconvenience arose with reference
to needed alterations, and the purpose of the act was to avoid
application to the legislature for leave to make every change
deemed necessary, by giving the power to make such altera-
tions to the commissioners of highways of the towns upon appli-
cation of twelve freeholders, etc. But it will be observed that
there is nothing in this legislation, or that of chapter 317 of
the Laws of 1882, or of section 77 of the County Law, that in
any particular purports to limit or deprive commissioners of
highways of any of the powers that they theretofore possessed
with reference to the altering of highways. It is, doubtless,
true that as to highways that have been laid out by special
statutes the power of the commissioners of highways to change
and alter the same is dependent upon the legislation to which
we have referred, and that under the County Law their
power is now dependent upon the consent of the board of

supervisors of the county; but these highways are limited to those authorized by the special acts of the legislature and do not include such highways as had before been given over to the care of the commissioners of highways of towns with power on the part of the local officers thereof to make needed alterations.    This brings us to a consideration of the history of the road in question and the legislation bearing thereon.

The New York and Albany post road was constructed under the provisions of chapter 131 of the Colonial Laws of 1703. It was a general statute entitled "An act for the laying out, regulating, cleaning and preserving public common highways throughout this Colony." It provides as follows: "For the better laying out ascertaining, repairing and preserving the publick comon and general highways within this Colony. Be it enacted by the Govr. council and General Assembly of this Colony and by the Authority of the same. That there be laid out preserved and kept for ever in good and sufficient repair one publick comon & general highway to extend from the now scite of the City of New York thro' the City and County of New York and the county of West Chester of the breadth of four rod English measure at the least, to be continue and remain forever the publick comon general road and highway from the said City of New York to the adjacent Collony of Connecticutt.   *   *   *   And one other publick comon general highway to extend from Kings Bridge in the county of West Chester thro' the same county of West Chester Dutchess county and the county of Albany of the breadth of four rod English measure at the least to be continue and remain for ever the publick comon general road and highway from King Bridge aforesaid to the ferry at Crawlew over against the City of Albany." It also contained provisions for the laying out of other roads connecting towns and villages to one another and to such convenient landing places as their situations will afford, "for the better and easier transportation of goods and the commodious passing of travelers as direct and convenient as the circumstances of place will admit of." Commissioners were appointed in the different

localities to carry out the provisions of the act, including
New York, Dutchess and Westchester counties, thus laying
the foundation upon which our highway laws have been con-
structed and perfected. Numerous amendments were made
from time to time from which the growth of the law
is disclosed, which may be interesting as history, but are
not essential to be here considered. As early as 1772 we
find that in Dutchess county the freeholders and inhabitants
of each precinct at their annual town meetings were required
to elect three highway commissioners to regulate highways
in their precinct. The provision of the law, as far as mate-
rial, is as follows: " That the commissioners, or the major
part of them, in their respective precincts for which they
shall be chosen commissioners, are hereby empowered and
authorized to regulate the roads already laid out, and *if
any of them shall appear inconvenient, and an alteration
absolutely necessary*, and the same be certified upon the oath
by twelve principal freeholders of the said county, the com-
missioners may, provided they all judge it necessary, alter the
same, and lay out such other public highways and roads as
they, or the major part of them shall think most convenient."
(Colonial Laws, 1772, chapter 1536.) The next statute to
which we call attention is chapter 31 of the Laws of 1779,
after the organization of the state government, entitled " an
act for the better laying out, regulating and keeping in
repair all common public highways and private roads in the
counties of Ulster, Orange, Dutchess, Charlotte and West
Chester." This statute contains a similar provision to that
found in the colonial laws already referred to. It gives to
the commissioners of highways the power and authority " to
regulate the roads already laid out, and if any of them shall
appear inconvenient and an alteration necessary     *     *     *
they may be required to alter the same in such manner as a
majority of the commissioners in such town, manor, district or
precinct shall judge meet and convenient." This act was fol-
lowed by chapter 43 of the Laws of 1797, a general act cover-
ing all of the state except the counties of New York, Suffolk,

1903.]    People ex rel. Dinsmore v. Vandewater.    509

N. Y. Rep.]      Opinion of the Court, per Haight, J.

Queens and Kings.  In this act the commissioners of high-
ways are given the power " to regulate the roads already laid out
and to alter such as they or a majority of them shall conceive
inconvenient."  This statute, with some amendments, was
continued in force until 1813, when it was superseded by the
general highway act (Chapter 33 of that year) containing the
same provisions, and this, with some amendments, was carried·
into the Revised Statutes and is now incorporated into our
Highway Law.  It is thus apparent that under the colonial laws
as early as 1772, especially in Dutchess county where the alter-
ation in question was made, commissioners of highways were
empowered to alter highways that were deemed inconvenient,
and that this power was continued by the state legislature in
1779 and by general laws in 1797 and 1813, and that the same
power has been continued until the present day.  It, there-
fore, follows that at the time of the passage of the County
Law, or of chapter 317 of the Laws of 1882, or even of chap-
ter 83 of the Laws of 1817, the commissioners of highways
of towns had been given jurisdiction over the existing colo-
nial highways, with the power to make such needed alterations
therein as should be deemed necessary, and that that power
has not been taken from them by the County Law.

The New York and Albany post road appears to have been
authorized by colonial legislation two hundred years ago.  It
was constructed and kept in repair by commissioners appointed
in the localities, and for over one hundred and thirty years in
Dutchess county it has been under the jurisdiction and con-
trol of the local highway officers of that locality, who have
had the power to make such alterations as a majority of them
should conceive to be convenient for the public.  These
authorities, in making the alteration complained of, appear to
have conformed to the requirements of the statute.  The
improvement is one that they had the power to make, and it
does not appear to us that the relator is concerned with refer-
ence to the validity of the title of Mills to the bed of the old
highway.  We, consequently, do not deem it important to dis-
cuss that question at this time.

The order of the Appellate Division should be reversed and the writ of certiorari dismissed, with costs.

BARTLETT, J. (dissenting). The single question is presented by this appeal whether the members of the town board and the highway commissioners of the town of Hyde Park, in the county of Dutchess, had jurisdiction to alter the route of the New York and Albany post road in that town.

The post road was created by chapter 131, Colonial Laws, 1703, and has remained a public highway ever since, a period of two hundred years.

The County Law (§ 77) contained in article 4, defining the duties of boards of supervisors relating to highways and bridges, which is a revision, without material change, of the Laws of 1882 (Chap. 317), provides that "The board of supervisors of any county may authorize and empower the highway commissioners of any town to alter, discontinue, widen, or narrow any road or public highway which shall have been laid out by the state within its boundaries, under the same conditions as would govern their action in relation to public highways that have been laid out by local authorities." (Birdseye's R. S., Vol. 1 [3d ed.], p. 839.)

It is conceded that in the case before us no power was conferred upon the town board and commissioners of highways by the board of supervisors of Dutchess county, but it is argued that the section quoted does not include the post road, for the reason that it was not laid out by the state as now existing.

The act of 1703, laying out the post road and other public highways, starts out with the declaration, "That there be laid out and kept forever," etc. We thus have the post road, a public highway, in the colony of New York, and when the latter achieved its independence the former continued a state public highway under the jurisdiction of the state of New York, and is clearly within the provisions of section 77 of the County Law as properly construed.

It is doubtless true that since the existence of public state

1903.]    People ex rel. Dinsmore v. Vandewater.    511

N. Y. Rep.]      Dissenting opinion, per Bartlett, J.

roads in the early days, the colonial assembly did, from time to time, confer the power upon the local authorities of towns to alter, repair and keep in proper condition that portion of a state road lying within the boundaries of a town.

In 1817 (Chap. 83) the policy was changed and the local authorities could only alter a state public highway in a particular town with the consent of the commissioners of highways of the adjoining towns through which it passed.

It is manifest that the legislation of 1882 (Chap. 317), perpetuated in section 77 of the County Law, was a clear expression of the legislative intention to change still further its policy and to delegate to a certain extent its powers in relation to state roads to the board of supervisors in each county, thus placing under the control of the latter all alterations thereof.

It follows that the town board and highway commissioners of the town of Hyde Park were without jurisdiction in the premises until authorized to act by the board of supervisors of Dutchess county.

An evidence of the supervising care of the legislature over state public highways is found in chapter 423, Laws of 1896. entitled "An act to preserve forever the New York and Albany post road as a state public highway." The material portions of this act read as follows :

" Section 1. The old established road along the valley of the Hudson river from the city of New York to the city of Albany, known as the Albany post road, shall be a public highway for the use of the traveling public forever.

" § 2. The said highway shall be kept open and free to all travelers, and shall not be obstructed in any way by any obstacle to free travel.

" § 3. No trustees of any village or corporation of any city upon its route, or board of commissioners of highways of towns, or any other person or board whatever, shall have any power or authority to authorize or license the laying of any railroad track upon said highway, except to cross the same, and any such action shall be void and of no effect.  *  *  *  *  "

It is argued that sections one and two are but a repetition of the law as it exists, and that the sole object of this act was to prevent the laying of any railroad track upon the post road.

In my opinion the act is very unfortunately worded, including the title, if its sole object was as suggested. The title should have been, "An act to prevent the laying of any railroad track upon the New York and Albany post road," and section three would have sufficed in carrying out this alleged sole object of the act. The fact is that the title of the act is used with entire accuracy — "An act to preserve forever the New York and Albany post road as a state public highway."

Section one makes the post road a state public highway if in law it had not theretofore existed as such.

This act clearly brings the post road within section 77 of the County Law, and renders the authorization of the board of supervisors necessary before the local authorities can alter the route of the same.

I have already stated the reason why the post road has always been a state public highway since the Revolutionary war, but if any legal doubt existed it is set at rest by the act of 1896.

Sections two and three of this act disclose the legislative intention to prevent all interference with the post road as a state public highway, except as the board of supervisors may act under the powers delegated to them under section 77 of the County Law.

I vote for the affirmance of the order of the Appellate Division annulling the action of the town board and highway commissioners of the town of Hyde Park.

PARKER, Ch. J., O'BRIEN, VANN, CULLEN and WERNER, JJ., concur with HAIGHT, J.; BARTLETT, J., reads dissenting opinion.

Order reversed, etc.