

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

September 23, 1971

Hon. Charles R. Barden, P.E.    Opinion No.    M-957
Executive Secretary
Texas Air Control Board         Re:  Whether the Texas Air
1100 West 49th Street                Control Board or its
Austin, Texas    78756               Executive Secretary have
                                     discretion to determine
                                     what matters are "con-
                                     fidential information"
                                     and "public records" as
                                     those terms are used in
                                     Sections 1.07 and 2.13
                                     of the Texas Clean Air
Dear Mr. Barden:                     Act.

        You have asked:  "Does the Texas Air Control Board or
the Executive Secretary have discretion over which items and
matters are to be deemed 'confidential information' and 'pub-
lic records' as those terms are used in Sections 1.07 and
2.13 of the Texas Clean Air Act?"  We will deal first with
"confidential information".

        The term "confidential information" is found in the
Texas Clean Air Act, Article 4477-5, V.A.C.S., as the cap-
tion of Section 1.07.  Its meaning appears clear from the
language of the section itself:

                "Information submitted to the board relating
                to secret processes or methods of manufacture
                or production which is identified as confiden-
                tial when submitted shall not be disclosed by
                any member, employee, or agent of the board."

        Thus, "confidential information" as used in this sec-
tion is only that which relates "to secret processes or
methods of manufacture or production".  This is similiar to
a "trade secret".  A "trade secret" may consist of any form-
ula, pattern, device or compilation of information used in

-4685-

one's business and which gives him an opportunity to obtain an advantage over competitors who do not know of or use it and generally relates to the production of goods through it. Hyde Corp. v. Huffines, 158 Tex. 566, 314 S.W.2d 763, 776, 777 (1958). It may be a device or process which is patentable, but it need not be, and it may be a device or process which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make, and novelty and innovation are not requisite. K & G Tool & Service Co. v. G. & G. Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782, 789 (1958).

Section 1.07 requires that the information be identified as confidential when submitted, but it does not indicate who is to classify it as such. Because the one submitting the information will necessarily be in the best position to know whether or not it is "confidential", Section 1.07 should be read to mean that he is the one to make the initial classification. And if classified "confidential", the information will be screened from public inspection under Section 2.13, and from public disclosure by the board.

But the further question remains whether it can be referred to in a board order, or at a board hearing or in a court proceeding. Surely, the Legislature in writing Section 1.07 did not intend to prevent the Texas Air Control Board from using the contents of the "confidential information", where material and relevant, to form the basis of informed administrative decisions or action. Certainly, then, a board order can be based on "confidential information" in the board's file and can refer to the existence of such information, so long as the order does not disclose its substance.

It is clear that no absolute privilege for trade secrets is recognized. VIII Wigmore, Evidence, page 156, Sec. 2212 (McNaughton Revision 1961). And a statute generally declaring records to be confidential should be liberally construed to contain an implied exception for disclosure when needed in a judicial or quasi-judicial proceeding. Attorney General Opinion No. M-213 (1968). On the other hand, courts are not apt to require disclosure except in such cases and to such extent as may appear to be indispensable for the ascertainment of truth. VIII Wigmore, Evidence, page 157, Sec. 2212, supra.

In Sections 2212 and 2377 of VIII Wigmore, Evidence, supra, it is indicated that the general privilege for trade secrets is broader when applied to disclosure by an <u>official</u> of secrets contained in a report <u>required by law to be made to him</u>.

Therefore, if it is necessary to put portions of the "confidential information" into evidence at a board meeting in order to make a complete record, the board, acting in its quasi-judicial capacity should follow the procedure approved in <u>Crane v. Tunks</u>, 160 Tex. 182, 328 S.W.2d 434 (1959). The board should submit the confidential information proposed to be used to the parties whom the confidential information directly concerns, in private. The affected party or parties could then privately make to the Air Control Board all their objections to the use of such evidence or to the making public of the evidence. The evidence would then be sealed and made a part of the record without being made public. This would afford the parties involved and the board the opportunity to consider the propriety of the introduction of the evidence, as between the needs of the board to rely on the evidence and the rights of the parties to have the information remain secret. The "confidential information" remains confidential, but is in this way available to a court in the event of an appeal of the board decision.

In response to your question about "confidential information", you are advised that the Texas Air Control Board or its Executive Secretary do not have the discretion to determine what is "confidential information" as defined above. But they may refer to and rely upon such information as the basis for board orders and decisions so long as the substance of the information is not disclosed. The existence of this confidential information may be referred to at public board hearings, but the substance of the information can be put into evidence only when it is material and relevant to an issue at the hearing, and only by using the procedure outlined above.

The next part of your question deals with "public records". The key phrase is, "public records open to inspection by any person". Section 2.13 of the Texas Clean Air Act is captioned, "Documents, etc., public property", and reads:

> "All information documents and data collected
> by the board in the performance of its duties
> are the property of the State. Subject to the
> limitation of Section 1.07 of the Act, all       ·
> records of the board are public records open
> to inspection by any person during regular of-
> fice hours."

The Texas Air Control Board keeps many records and com-
piles much data in carrying out its duties as the principal
authority in the state on matters relating to air quality,
criteria, standards, and emission levels for pollution con-
trol. Section 1.05, Article 4477-5, V.A.C.S. While most
of these records and data are public records, and many would
be admissible as such in a court proceeding, some of the data
and information compiled and kept by the board is compiled
pursuant to the board's enforcement duties and is not "open
to inspection by any person".

In addition to the usual administrative records, such
as rules, regulations, standards, minutes of meetings, orders,
and the like, which are clearly open to inspection, the Texas
Air Control Board maintains files on matters under investiga-
tion for violation of the Texas Clean Air Act. This data is
evidence or potential evidence for an enforcement action pur-
suant to Section 4.02 of the Act, and we hold that it is not
open to inspection by the public.

If evidence or potential evidence or preliminary data
compiled and held by the board were open to inspection by
the public, the enforcement activities of that agency would
be subject to burdensome interference. The right of inspec-
tion of public records may not be exercised so as to unreason-
ably interfere with the business of government. Mac Ewan v.
Holm, 226 Ore. 27, 359 P.2d 413, 85 A.L.R.2d 1086 (1961);
Annotation 85 A.L.R.2d 1105.

While the Texas courts have not dealt with this question
directly, other jurisdictions have. In Mathews v. Pyle, 75
Ariz. 76, 251 P.2d 893 (1952), the court held that documents
gathered in an attorney general's investigation report to the
governor of Arizona were not "public records open to inspection
of any person". The governor had the initial right to deter-
mine what documents should be made public, but the ultimate

determination rested with the courts. <u>Sorley v. Lister</u>, 218
N.Y.S.2d 215 (N.Y. Sup. 1961), is the best case found which
clearly classifies which records are open to inspection.
This was an action wherein certain persons whose property was
under condemnation demanded the appraisal reports and records
as to prices paid and to be paid for real estate. The Court
set up three classes of records as follows:

(1)   Records which are public because the statutes
specifically make them so or because the Court thinks they
are public. These records may be inspected under reasonable
rules and regulations set up by the custodian of the records.

(2)   Those types of records which the Court considers.
to be public records, but which it is unwilling to open to
public inspection by calling them public records. Examples
of this type of record are motor vehicle accident reports,
reports to a state tax commission, certain health records,
certain financial statistics, and court and trust fund rec-
ords. In this case the right of inspection exists only if
the person shows a private interest different from that which
the rest of the public has.

(3)   Papers or documents which are not in any sense open
to the public. Here the right of inspection does not exist.
Examples of this type are police reports, confidential com-
munications, <u>evidence</u>, parole board records, and certain lists
and records not required to be kept but which are kept to fa-
cilitate administrative procedures.

Thus, while most of the records of the Texas Air Control
Board are public records, evidence gathered and data main-
tained in an investigation is not, and such is not open to
inspection. While certain types of evidence might be discov-
erable in a court proceeding with a proper motion under Texas
Rules of Civil Procedure Rules 167 and 186a, this evidence
would not be publicly "open to inspection by any person", pur-
suant to Section 2.13 of the Act. The Texas Air Control Board
would be entitled to the protections of the provisos of those
discovery rules, limiting the scope of discovery, just as any
other litigant is. <u>Shirley v. Dalby</u>, 384 S.W.2d 362, 368,
369, (Tex.Civ.App. 1964 error ref. n.r.e.).

The Texas Air Control Board or its Executive Secretary are the proper ones to decide which of their records, information, documents and data they have compiled will or may be used in enforcement proceedings. And they are therefore in the best position to determine which of their records are "public records", and which are not.

## S U M M A R Y

"Confidential information" as used in Sections 1.07 and 2.13 of the Texas Clean Air Act is similar to "trade secret" and applies only to "processes or methods of manufacture or production". "Public records open to inspection" as used in Section 2.13 includes most of the administrative records of the Texas Air Control Board, but does not include evidence, potential evidence, and preliminary data compiled pursuant to the board's enforcement duties. The board or its Executive Secretary have discretion to determine what matters are "public records open to inspection" and which are not, but do not have discretion to determine what is "confidential information". The board may rely upon "confidential information" as the basis for board orders and administrative decisions, but may not make public such information over the objection of the interested parties.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Richard W. Chote
Assistant Attorney General

APPROVED
OPINION COMMITTEE:

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Malcolm Quick
Milton Richardson
Malcom Smith
Fisher Tyler

SAM McDANIEL
Acting Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant