**Christopher M. JONES, Plaintiff,**

v.

**The CITY OF COLLEGE PARK, GEORGIA, Defendant.**

**No. CIV A 1:05–CV–1797–JTC–ECS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 24, 2006.

---

Arch Y. Stokes, John R. Hunt, Shea Stokes Carter, College Park, GA, for Plaintiff.

Kelly Michael Hundley, Clay Colvin Mingus, Elarbee Thompson Sapp & Wilson, Atlanta, GA, for Defendant.

## ORDER

SCOFIELD, United States Magistrate Judge.

### I.

#### Introduction

The above matter is presently before the Court on the motion for a protective order filed by Defendant The City of College Park, Georgia ("Defendant" or "City of College Park"). [Doc. 50]. The motion seeks protection from disclosure of communications made during closed, executive sessions of the Mayor and City Council of Defendant, the City of College Park. [Doc.50–2] at 3. For the reasons stated herein, Defendant's motion is **DENIED**.

### II.

#### Background

The present action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., alleging racial discrimination relating to the termination from employment by the City of College Park of Christopher Jones ("Plaintiff"). Plaintiff was allegedly terminated at a City Council meeting on April 19, 2004, by non-renewal of Plaintiff's employment agreement pursuant to a vote of certain members of the council.

On November 17, 2005, Defendants took the deposition of Russell Slider, one of the city council members, who was directed by counsel for Defendant, based upon a claim of privilege, not to answer questions about what occurred in the city council's closed "executive sessions." Efforts to resolve the impasse regarding this testimony were unfruitful. Defendant produced minutes of the council meetings, both regular and executive session, for the date of the non-renewal decision, April 19, 2004, but Plaintiff was dissatis-

fied with this limited production and insisted on broader discovery rights from the council members regarding his claims. This motion was filed after a telephone conference with the Court. [Doc. 48].[1]

### III.

#### The Parties' Contentions

Defendant argues that inquiry into what may have been said at the executive sessions of the city council is protected by a federally-recognized privilege protecting against disclosure of governmental deliberations. Defendant also argues that state law permitting closing certain meetings to the public also supports recognition of a privilege in this case.

Plaintiff argues that because intent to discriminate is so central to an action under Title VII, the deliberative process privilege relied upon by Defendant must give way to the Plaintiff's right to obtain relevant evidence. Plaintiff argues, in other words, that where the subjective motivation of the decision-making agency is at issue, as in a discrimination case, the privilege does not apply. As for the effect of state law, Plaintiff first argues that state law does not provide the rules of decision for privilege issues in the federal courts under federal law. Second, even if Georgia law could be applied, Georgia does not recognize such an evidentiary privilege.

### IV.

#### Discussion

The Supreme Court has long held that "the public ... has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (omission in original) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)). Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any par-

---

1. Defendant offered to waive any privilege as to the executive sessions of April 19, 2004, and to permit questioning of Slider as to any comments made at that meeting pertaining to Plaintiff and renewal of his employment. [Doc. 50–2] (Def.'s Br. at 2)

ty." Fed.R.Civ.P. 26(b)(1). Rule 501 of the Federal Rules of Evidence provides in pertinent part: "Except as otherwise required by the Constitution . . . by Act of Congress or in rules prescribed by the Supreme Court . . . , the privilege of a witness . . . shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

The Supreme Court has instructed that privileges should not be "lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *see also University of Penn. v. E.E.O.C.,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) ("We do not create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence . . .' ") (quoting *Trammel,* 445 U.S. at 51, 100 S.Ct. 906).

■ The Supreme Court recognized a deliberative process privilege in *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). In that case, the Court, comparing the proceeding before the Secretary of Agriculture to that of a judicial proceeding, held that "the mental processes" behind his decisions should not be probed. *Id.* This privilege has evolved to "protect[ ] the internal decision-making processes of the executive branch in order to safeguard the quality of the agency decisions." *Nadler v. United States Dep't of Justice,* 955 F.2d 1479, 1490 (11th Cir.1992), *abrogated on other grounds, United States Dep't of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). To invoke the privilege, the communications must be "(1) pre-decisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, i.e., a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Florida House of Representatives v. U.S. Dep't of Commerce,* 961 F.2d 941, 945 (11th Cir.1992) (internal citations and quotations omitted).

■ The deliberative process privilege, however, is not an absolute privilege. *Citi-*

*zens To Preserve Overton Park Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (permitting inquiry of administrative decisionmakers). To determine if the privilege applies, the court must weigh the government's interest in non-disclosure against the competing interest of the plaintiff in obtaining the discovery. *Scott v. Bd. of Educ.,* 219 F.R.D. 333, 337 (D.N.J.2004); *Anderson v. Marion County,* 220 F.R.D. 555, 560 (S.D.Ind.2004); *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir.1993); *Zinker v. Doty,* 637 F.Supp. 138, 141 (D.Conn.1986); *see Hinsdale v. City of Liberal, Kansas,* 1997 WL 557314, *1 (D.Kan.) ("Courts have consistently found that the privilege is outweighed by the interest in disclosure where a case is based on alleged violations of federally-protected civil rights.")(citing *United States v. Phoenix Union High Sch. Dist.,* 681 F.2d 1235, 1237–38 (9th Cir.1982)), *cert. denied,* 459 U.S. 1191, 103 S.Ct. 1169, 75 L.Ed.2d 422 (1983).

■ Furthermore, the privilege "is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials." *Grossman v. Schwarz,* 125 F.R.D. 376, 381 (S.D.N.Y.1989); *see also Soto v. City of Concord,* 162 F.R.D. 603, 612 (N.D.Cal.1995)("[t]he deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy.") The privilege is not designed to shield all communications that support any decision made by a government agency. *Scott v. Bd. of Educ. of City of East Orange,* 219 F.R.D. 333, 337 (D.N.J.2004).

■ Moreover, the deliberative process privilege yields "when government misconduct is the focus of the lawsuit." *Tri–State Hosp. Supply Corp. v. United States,* 226 F.R.D. 118, 134–35 (D.D.C.2005). The prevailing view appears to be that the government misconduct exception is simply a restatement of the principle that the deliberative process privilege does not apply when the government's intent is at issue. *See, e.g., Tri–State Hosp.,* 226 F.R.D. at

134–35 ("Under the government misconduct exception, there is no need to engage in a balancing test because the privilege does not apply at all."); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 163–65 (D.D.C.1999) (rejecting the government's contention that misconduct is merely a factor to be balanced); *In re Sealed Case*, 121 F.3d 729, 746 (C.A.D.C.1997) ("Moreover, the privilege disappears altogether when there is any reason to believe government misconduct occurred."); *but see U.S. v. Lake County Bd. of Com'rs*, 233 F.R.D. 523, 527 (N.D.Ind.2005)(applying balancing test); *Hinsdale*, 1997 WL 557314 at *1 ("Courts have consistently found that the privilege is outweighed by the interest in disclosure where a case is based on alleged violations of federally-protected civil rights.").

In the instant case, Plaintiff seeks to recover under Title VII and 42 U.S.C. § 1983 for racial discrimination in connection with nonrenewal of Plaintiff's employment. Plaintiff seeks to interrogate the city's council members about what may have occurred during the council's closed executive sessions. In other words, the Plaintiff is seeking discovery from the decision-makers involved in the employment decision that is the central focus of the lawsuit. Except to the extent Defendant is waiving the privilege as to the executive session on April 19, 2004, Defendant contends that Plaintiff should be foreclosed from any such inquiry.

■ Based upon the authorities set forth above, the motion for protective order should be denied. Whether this court applies a balancing test or finds that the privilege simply does not apply, the undersigned reaches the same result. First, the undersigned has some doubt that the discovery sought here threatens to encroach upon the type of deliberations intended to be protected by the privilege. While the personnel decision at issue here (non-renewal) may be deliberative in the sense that the decision requires some deliberation, this court questions whether more than this is not required to qualify for the privilege. The non-renewal of Plaintiff's contract is essentially a relatively routine personnel decision. As such, communications relating to this decision would not appear to be a direct part of the deliberative process in that they do not "make recommendations or express opinions on legal or policy matters." *Florida House*, 961 F.2d 941, 945 (11th Cir.1992); *see also Soto*, 162 F.R.D. at 612–13.

■ Setting aside this threshold issue, however, this court concludes that the privilege is simply inapplicable, because government intent is at the heart of the issue in this case. Plaintiff must prove intentional discrimination by the government in order to recover. Plaintiff therefore has a compelling interest in discovery of evidence of such intent. This interest must be balanced against the governmental interest in non-disclosure, and when this balance is struck, the Plaintiff's interest prevails.

In balancing competing interests in a similar case involving a state law privilege issue, Judge Tidwell of this court noted as follows:

Here the interest of the plaintiff is great. This is a discrimination action alleging unconstitutional motivations in terminating plaintiff's employment. The commissioners went into executive session whenever employment matters were discussed. These tapes might be the only evidence available to plaintiff illuminating intent. On the other side, defendants have an interest in confidentiality of the personnel matters and an expectation of privacy so that unfettered discussions of personnel can occur . . . . .

Here the plaintiff is an individual litigant desiring important information for use at trial. Further, the plaintiff has agreed to enter into a protective order against any other disclosure thus protecting unnecessary intrusions into defendant's confidentiality. The balancing test clearly favors plaintiff under the facts of this case.

*Shell v. Coweta County*, 1985 WL 6068, *2 (N.D.Ga.1985).

As in the *Shell* case, in this case the privilege should yield in favor of allowing the discovery. Stated alternatively, the government's interest in protecting these communi-

cations is outweighed by the Plaintiff's interest in disclosure.[2]

## V.

### *Conclusion*

Plaintiff is entitled to depose the city council members and to inquire into matters relevant to the Plaintiff's claims, which would include, but would not be limited to, evidence of any intent to discriminate against Plaintiff on the basis of race; evidence of racial animus that might provide direct or circumstantial proof of intent to discriminate; evidence of contradictory or inconsistent reasons given for Plaintiffs non-renewal; any evidence of similarly-situated comparators outside Plaintiffs protected class who may have been more favorably treated; any evidence relevant to pretext. In sum, the motion for protective order [Doc. 50] is **DENIED**, except that Plaintiff and her attorney are prohibited from using or discussing any information derived from this discovery for any purposes other than that prosecution of Plaintiff's claims in this litigation.

---

2. As far as Defendant's arguments under state law are concerned, this Court finds no privilege, for such communications recognized under Georgia law. *See Shell v. Coweta County*, 1985 WL 6068, *2. Furthermore, the issue of privilege in this case is governed by federal law. Rule 501, Fed. R. Evid; *see Matter of Int'l Horizons, Inc.*, 689 F.2d 996, 1005 (11th Cir.1982); *Dominguez–Silva v. Harvey*, No. Civ. 3:04–CV–135, 2006 WL 826091 * 1 (N.D.Ga.2006); *Hancock v. Hobbs*, 967 F.2d 462, 466–67 (11th Cir.1992).